E-FILED
Thursday, 20 March, 2014 03:37:55 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MICHAEL E. DEBACKER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-4062 |
| CITY OF MOLINE and JAY TITUS, individually, | ) |
| Defendants. | ) |

**O R D E R**

Now before the Court is Defendant Jay Titus' Motion to Dismiss Counts III, VI, VII, and VIII. For the reasons set forth below, the Motion [13] is GRANTED IN PART and DENIED IN PART.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 as the claims asserted in the Complaint present federal questions under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, and the Americans with Disabilities Act, 42 U.S.C. §§12112(d) and 12203(a) ("ADA"). The Court further has supplemental jurisdiction over Plaintiff's state law claims for slander, intentional infliction of emotional distress, libel, and tortious interference with a contract pursuant to 28 U.S.C. § 1367.

**BACKGROUND**[1]

Plaintiff, Michael DeBacker ("DeBacker"), began working for Defendant City of Moline (the "City") in April 1994. He has been a police officer for 18 years, without any complaints or

---

[1] The following factual allegations are taken from the well-pled allegations in the Complaint and are presumed to be true for purposes of this Motion.

discipline and is certified as a Traffic Crash Reconstructionist and a Master Firearms Instructor. At the times relevant to this Complaint, he was a Traffic Investigator and Firearms Instructor.

On June 16, 2011, the Moline Police Department received information that DeBacker had made a threat against Lieutenant Jay Titus, and DeBacker was taken for a psychiatric evaluation at the Robert Young Center. The evaluating psychiatrist advised that DeBacker posed no threat to himself or others and could be discharged. Upon learning this recommendation, the City threatened to obtain a court order committing him if he did not stay voluntarily. As a result, DeBacker voluntarily admitted himself. Three days later, he was discharged without any change in medication and with two psychiatrists supporting the return of his guns to his home and the reinstatement of his FOID card. DeBacker was released to return to work on July 21, 2011 with no restrictions. However, the City refused to allow him to return to work, demanding that he undergo intensive psychological testing through Stanard & Associates, Inc. in Chicago, Illinois.

On August 23, 2011, DeBacker was evaluated at Stanard & Associates, Inc. He was found to be fit for duty as a fully armed police officer, and several recommendations were made to assist with DeBacker's transition back into his position. The first was that he participate in an immediate meeting with his Chief and Lieutenant Titus. Following this session, it was recommended that DeBacker begin in a light duty capacity and transition back into his full duties to allow him to manage stress and significant changes in his position. The final recommendation was that if the issues with Lieutenant Titus could not be addressed, DeBacker should be considered for work on a different shift. None of these recommendations were followed, and on September 15, 2011, the City sent him a letter stating that he was directed to return to work on September 19, 2011.

When DeBacker returned to work, he was demoted to a new position titled "Booking Officer," that did not appear on the Police Department Organizational Chart. This new position consisted mostly of tedious paperwork in the basement. His access to many areas of the department was restricted, including the garage, indoor shooting range, records, and Traffic Investigations. DeBacker was also restricted from driving any marked or unmarked police cars, handling any firearms or firearms equipment, and wearing a police uniform or displaying any police insignia.

On September 26, 2012, Lieutenant Titus filed a Complaint against the Police Chief with the Board of Fire and Police Commission regarding the Chief's deicison not to discipline DeBacker for his threat against Titus and requesting DeBacker's termination. The Commission reaffirmed that there were no grounds for disciplining DeBacker. The City of Moline made this decision available to the press, and it was ultimately published in the newspaper. DeBacker subsequently requested reinstatement to his former position on several occasions, but no action was taken on these requests. DeBacker filed a Complaint with the EEOC, and on July 9, 2012, he and the City participated in a mediation with the EEOC. No settlement was reached. On August 8, 2012, DeBacker was terminated.

DeBacker brought this action alleging violations of his rights under Title VII, the ADA, and the FMLA as well as state law causes of action for Intentional Infliction of Emotional Distress ("IIED"), Libel, Slander, and Tortious Interference with a Contract. Defendant Titus has moved to dismiss the state law counts to the extent that they are alleged against him. DeBacker has filed a response, and this Order follows.

**STANDARD OF REVIEW**

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See* Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). Furthermore, the claim for relief must be "plausible on its face." Id.; Ashcroft v. Iqbal, 129 S.Ct. 1937, 1953 (2009).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See* Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. V. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

**DISCUSSION**

Titus first argues that the defamation claims in Counts VI and VII are barred by the one-year statute of limitations. The libel claim alleged in Count VI is based on emails from Titus to the Illinois State Police indicating that DeBacker's plan to kill him "was very specific, over a period of time and he took steps to carry through with it," and a notarized statement to the Illinois State Police on November 2, 2011. DeBacker's Complaint was filed on July 19, 2013,

more than a year later. However, DeBacker states that he was unaware of the existence of these documents until July 11, 2013, when he received them from the Illinois State Police.

DeBacker responds that the Discovery Rule should apply to prevent the statute of limitations from beginning to run until he knew or should have known of the defamatory conduct. As the emails and notarized statement to the Illinois State Police forming the basis for Count VI were "hidden, inherently undiscoverable, or inherently unknowable" to DeBacker until they were produced to him pursuant to a FOIA request in July 2013, they would appear to be subject to the Discovery Rule, and his claim in Count VI would not be barred by the statute of limitations.

The slander claim alleged in Count VII is based on oral communications by Titus to various individuals indicating that DeBacker was crazy, had specific plans to murder Titus and his family, had elaborate maps of Titus' home, took steps to carry through with his plan, was unstable and a danger to the public, and questioning DeBacker's competency in his profession. There is no indication in the Complaint of when or to whom these statements were made, but Titus asserts that they were made to the Chief of Police and the Commission in the fall of 2011 and prior to February 1, 2012. DeBacker does not address the application of the statute of limitations to Count VII or assert the application of the Discovery Rule to these oral statements. Accordingly, the Court finds that Titus is entitled to the dismissal of the slander claim in Count VII as barred by the statute of limitations.

Titus next argues that DeBacker has failed to state a claim for IIED. To state a claim for intentional infliction of emotional distress under Illinois common law, Plaintiff must allege that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe

emotional distress; and (3) Defendants' conduct did cause severe emotional distress. *See* Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir. 1997); Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. 1994); McGrath v. Fahey, 533 N.E.2d 806, 809 (Ill. 1988). Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency . . . ." Public Finance Corp. v. Davis, 360 N.E.2d 765, 767 (Ill. 1976); Kolegas v. Heftel Broad. Corp., 607 N.E.2d 201, 211 (Ill. 1992). Moreover, "as to the third prong, an action may lie 'only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *See* McNamara v. Guinn, 2000 WL 1222128, at *3-4 (N.D.Ill. August 23, 2000), *citing* McGrath, 533 N.E.2d at 809. In the employment context, recovery has been limited to cases in which the employer's conduct is truly egregious. Van Stan, 125 F.3d at 568.

  Rule 8 of the Federal Rules of Civil Procedure requires that any complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). Although a plaintiff need not include detailed factual allegations, a Complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). The Supreme Court has also clarified that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 -1965 (2007). Furthermore, the claim for relief must be "plausible on its face." Id.; Iqbal, 129 S.Ct. at 1953.

  With these statements in mind, the Court finds that the factual allegations contained in the Complaint marginally meet the Twombly standard, as they, by the barest of margins, provide

"enough facts to state a claim to relief that is plausible on its face". Hecker, 556 F.3d at 580. The Court cannot find at this early stage of the litigation that Titus' allegedly repeated statements that DeBacker, a police officer, had made a specific and detailed plan of attack to kill a supervising officer and his family, took steps to carry out that murder, and that he was unstable and a danger to the public over the course of a two-year period could never rise to the level of extreme or outrageous conduct necessary to maintain an IIED claim. The Motion to Dismiss the IIED claim in Count III is denied.

Titus further asserts that the libel claim in Count VI fails to state a claim, as DeBacker does not specifically identify any of the allegedly libelous statements made to the Illinois State Police. To state a claim for defamation, a plaintiff must allege sufficient facts to show that the defendant "made a false statement concerning [the plaintiff], that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." McGreal v. AT&T Corp., 892 F.Supp.2d 996, 1016 (N.D.Ill. 2012), citing Krasinski v. UPS, Inc., 124 Ill.2d 483 (1988); Solaia Tech., LLC v. Specialty Pub. Co., 221 Ill.2d 558 (2006). When filed in federal court, a defamation claim is held to the usual rules for notice pleading under Rule 8. Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 926 (7th Cir. 2003).

Again, Rule 8(a) does not require a claimant to set forth a detailed statement of the claim, but rather only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 103 (1957). To survive a motion to dismiss, the complaint's factual allegations need not be detailed but must be sufficient to "state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "Nonetheless, a plaintiff must provide "only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is

plausible, rather than merely speculative, that he is entitled to relief.'" Reger Development, LLC v. National City Bank, 592 F.3d 759. 764 (7th Cir. 2010), *citing* Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff's allegations with respect to the libel claim are sparse, but ultimately provide fair notice of the grounds upon which the claims rest and show the plausibility of relief. The Complaint sets forth the general details, substance of the words at issue, and timeframe of the statements, as well as the fact that they were made by Titus to the Illinois State Police. The Court finds that this provides sufficient contextual detail to put Titus, the author of these documents, on fair notice of the claim being asserted against him. *See* Earl v. H.D.Smith Wholesale Drug Co., 2009 WL 1871929, at *3 (C.D.Ill. June 23, 2009), *citing* Wright v. Sodexho Marriott Services, 30 Fed.Appx. 566, 566-67 (6th Cir. 2002).

Titus contends that even if DeBacker has stated a claim for libel, Titus is entitled to immunity under the *Noerr-Pennington* doctrine. Titus cites Westfield Partners, Ltd. v. Hogan, 740 F.Supp. 523, 526 (N.D.Ill. 1990), for the proposition that citizens were immune from suit for efforts to petition township officials to vacate a public roadway. He also relies on Tarpley v. Keistler, 188 F.3d 788 (7th Cir. 1999), for the proposition that statements made advocating the appointment of one candidate for a position cannot be used against them by the unsuccessful candidate. However, these cases both dealt with § 1983 claims for denial of due process or interference with the right to political association rather than state law defamation claims, which the Supreme Court has held are outside the scope of the *Noerr-Pennington* doctrine. Fredrickson v. Proviso Township, 814 F.Supp.2d 802, 807 (N.D.Ill. 2010), *citing* Blount v. Stroud, 395 Ill.App.3d 8, 33 (1st Dist. 2009) (noting that the Supreme Court "declined to allow the doctrine to be used as a defense to defamation, holding that the first amendment's right to petition does not

insulate individuals from liability for maliciously publishing falsehoods about another"); McDonald v. Smith, 472 U.S. 479, 485 (1985) (holding that "[t]he right to petition is guaranteed; the right to commit libel with impunity is not"); Myers v. Levy, 348 Ill.App.3d 906, 919 (1st Dist. 2004) (applying the holding of McDonald under Illinois law.)

Titus alternatively maintains that he is entitled to absolute privilege for statements made in testimony or pleadings in a judicial proceeding. This privilege has been held to extend to statements made in police disciplinary proceedings. *See* Hartlep v. Torres, 324 Ill.App.3d 817 (1st Dist. 2001). As Titus made his comments to the Chief of Police and up the chain of command to the Police and Fire Commission, he argues that he is entitled to absolute immunity from the libel claim. He then extends this protection to the statements that he made to the Illinois State Police in connection with its proceedings to determine whether to reinstate DeBacker's FOID card.

While DeBacker concurs that the privilege protects statements made in various judicial or quasi-judicial proceedings, he asserts that these statements by Titus were not made by him as part of a judicial proceeding in which he was testifying or as a necessary preliminary to such testimony. There is nothing in the record indicating that these statements were part of a formal charge, were sent in response to some inquiry from the Illinois State Police, were part of any testimony by Titus, or were provided in the course of a hearing before the Illinois State Police. Accordingly, the Court cannot conclude that Titus is entitled to absolute privilege at this time.

Finally, Titus contends that DeBacker has failed to state a claim for tortious interference with a contract, as there is no allegation in the Complaint that DeBacker's employment contract was breached as a result of Titus' actions. The elements of a claim for tortious interference are: (1) a valid and enforceable contract between plaintiff and another party; (2) defendant's

9

awareness of the contract; (3) defendant's intentional and unjustified inducement of the breach; (4) a breach by the other, caused by the defendant's wrongful conduct; and (5) damages. Burrell v. City of Mattoon, 378 F.3d 642, 651-52 (7th Cir. 2004).

Titus argues that the allegations of the Complaint indicate that Titus' requests and complaints were rejected by both the Chief and the Commission and that DeBacker was fired in retaliation for filing his complaint with the EEOC. DeBacker responds that Titus also interfered with his attempt to have his FOID card reinstated, and that the reason stated by the City for his termination was that he did not have a FOID card. In fact, ¶ 104 of the Complaint alleges that Titus "further made false representations to the Illinois State Police in emails and a notarized written statement in an effort to prevent Plaintiff, Michael E. DeBacker, from having his FOID Card reinstated, knowing that this would impact his employment contract with Defendant, City of Moline." Paragraph 105 further asserts that Titus' actions were the proximate cause of damages to DeBacker, as his contract for employment with the City was terminated. This is sufficient to state a claim for purposes of Rule 8.

The statements to the Illinois State Police are again asserted to be privileged, either because of *Noerr-Pennington* and testimonial immunities to defamation claims or as statements made in "acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill.2d 145, 156-57 (1989). The Court has rejected the application of the asserted defamation privileges previously in this Order. The privilege identified in HPI Health Care involves opinions rendered by mental health professionals as part of a process for determining an officer's fitness for duty and the public policy for protecting the health professionals' ability to provide an accurate opinion without fear of being sued.

> Sound public policy supports recognition of a privilege for statements made under the circumstances of this case. An effective process for evaluating fitness of police officers is essential to ensuring public safety and maintaining a reliable, responsible police force. Subjecting evaluators who conscientiously fulfill their contractual obligations to provide such evaluations to the apprehension that such work may subject them to civil suits would cripple the effective administration of such evaluations.

Turner v. Fletcher, 302 Ill.App.3d 1051, 1056, 235 Ill.Dec. 959, 706 N.E.2d 514 (1st Dist. 1999). Here, Titus was not providing an opinion as a mental health professional, but rather was continuing to voice his disagreement with the opinions of the mental health professionals, the Chief of Police, and the Commission. Accordingly, the Court cannot find that the asserted privilege is applicable under the facts of this case.

## CONCLUSION

For the foregoing reasons, Titus' Motion to Dismiss Counts III, VI, VII, and VIII [13] is GRANTED IN PART and DENIED IN PART. The Motion is granted with respect to the slander claim alleged in Count VII and denied in all other respects. However, DeBacker shall be afforded the opportunity to file an Amended Complaint setting forth some sufficient factual basis that his slander claim is not barred by the statute of limitations within 14 days from the date of this Order if he has a good faith basis for doing so. This matter is referred to the Magistrate Judge for further proceedings.

ENTERED this 20th day of March, 2014.

        s/ James E. Shadid
        James E. Shadid
        Chief United States District Judge